IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE MEREDITH

Petitioner, No. 2:10-cv-1395 JFM (HC)

vs.

RAUL LOPEZ,

Respondent. ORDER

_________________________________/

Petitioner, a state prisoner, proceeds pro se with a second amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636(c) and the parties' consents, filed on June 18, 2010 and March 9, 2011.

BACKGROUND

The California Court of Appeal, Third Appellate District, summarized the facts underlying petitioner's criminal convictions in this case:

> By the year 2006, Melvin Olsen, aged 93, had lived in a house on T Street in Sacramento for 70 years. He owned and occupied it alone.
>
> In September of that year (all of the events we set forth in this opinion occurred in 2006 unless otherwise stated), Olsen entered a hospital, suffering from dementia and age-related physical problems. In October, he was transfer

Before going into the hospital, Olsen asked Wayne W., his accountant and longtime friend, to take care of the house. Olsen did not ask or authorize Wayne W. To sell the house or to remove any personal belongings, According to his son, Olsen was "adamant that all of his things stayed just the way the are" because "he was planning on coming back." To Wayne W.'s knowledge, Olsen kept stock documents, cashier's checks, traveler's checks, and as much as $13,000 in cash in the house.

In keeping with Olsen's wishes, Wayne W. paid the utility bills and property taxes, hired a landscaper to maintain the yard, checked on the house periodically, picked up the mail, took trash cans out to the street, and went in occasionally to spray the air. Whenever he left the house, he locked the doors and secured the windows.

While it is somewhat unclear from the record, on December 26, Olsen may have been taken off life support.

On the morning of December 27, Wayne W. Drove to Olsen's house for the first time in a week; he had probably not been inside for two weeks. He pulled into the driveway, checked the mail, and walked back to his truck. At that point he saw two strangers, a black man and a white man, coming out of the garage. (He identified defendant in court as the black man.) When he asked them their names, they walked away in opposite directions; the white man crossed the front yard and walked down the street, while the black man went around the back. Wayne W. followed the white man, who turned around, got into a nearby parked car (the license plate number of which Wayne W. recorded), and sped off.

Wayne W. called 911, but because the police did not arrive quickly, he drove off looking for the black suspect. He spotted the man jumping a fence while talking on a cell phone, then lost sight of him. Encountering a UC Davis police officer, Wayne W. told him the story. Ultimately, the UC Davis police detained a car and two suspects, including the defendant, whom Wayne W. identified.

Accompanying law enforcement into Olsen's house, Wayne W. found the bolts pulled out of the garage door and property strewn all over the inside of the house. When Olsen's son went in, he saw that all the drawers had been dumped out and the locked closets had been broken into. He made a list of missing valuables, including a mink stole, a man's Seiko watch, a string of pearls, silver bars, coins, $15,000 in cash, and firearms.

A criminalist checked the scene for latent prints, but found none. Neighbors reported that they had not seen or heard anything unusual on the morning of the crime.

> When defendant was searched after his detention, he was found not to have any items on him from the list of Olsen's son. In addition to methamphetamine, however, the officers found a $100 traveler's check bearing Melvin Olsen's signature in defendant's wallet. According to Wayne W., Olsen had acquired traveler's checks for a trip, but kept the unused ones at home. Olsen's son testified that his father never would have thrown them away. The authorities also found a pen in defendant's jacket labeled "Mel Dor Enterprises," a name which combined the first syllables of Olsen's and his late wife's names; he had kept pens such as those in the house.
>
> On December 31, suffering from pneumonia and having taken an unexpected turn for the worse, Olsen died without ever having returned home.
>
> Defendant did not put on evidence [at trial].
>
> In argument, trial counsel conceded defendant's guilt on count 2 (receiving stolen property) and count 3 (possessing methamphetamine) but disputed count 1 (first degree burglary) on factual and legal grounds. Counsel asserted that the evidence on this count was insufficient: defendant did not possess any stolen property other than that going to count 2; his fingerprints were not found at the scene; and, noting that the neighbors did not notice anything unusual on December 27, argued that others must have invaded the house before that date because so much property was missing. Counsel also asserted that even if defendant entered the house that day and took property, he could not legally have committed first degree burglary because by that time the house was no longer an inhabited dwelling.

*People v. Meredith*, 174 Cal.App.4th 1257, 1259-1261 (3rd Dist. 2009); Lodged Document (LD) 10 at 5-6.

A jury found petitioner guilty of residential burglary, receiving stolen property, and possession of methamphetamine. In a bifurcated proceeding, petitioner admitted that he had served two prior prison terms and that he had one prior "strike" conviction as alleged for sentence enhancement purposes. The trial court sentenced him to an aggregate state prison term of 15 years. Clerk's Transcript ("CT") at 255.

On December 16, 2008, petitioner, through counsel, filed an opening brief to the California Court of Appeal, Third Appellate District, alleging instructional error and a due process violation for being compelled to stand trial before a jury while wearing identifiable jail

clothing. LD 4. The California Court of Appeal, Third Appellate District, affirmed the judgment in a published opinion. LD 10. The California Supreme Court denied a petition for review. LD 14.

In the meantime, petitioner filed a document titled petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District, requesting to have new appellate counsel appointed in his direct appeal and to file a supplemental brief. The state appellate court treated the petition as a motion to discharge counsel and denied it the same day. LD 5. The California Supreme Court denied a petition for review on this issue. LD 7.

Petitioner sought habeas corpus relief in the California Supreme Court, alleging in a single ground for relief that "on three different occasions during trial the fact that petitioner was wearing jailhouse clothing was mentioned." LD 17 at 3, 17. The California Supreme Court denied the petition with citation to *In re Waltreus*, 62 Cal.2d 218, 225 (1965). LD 18.

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

/////

/////

indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Under AEDPA, a state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Ybarra v. McDaniel*, 656 F.3d 984, 989 (9th Cir. 2011). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claims

A. Identifiable Jail Clothing

Petitioner claims the trial court improperly compelled him to stand trial in identifiable jail clothing. The California Court of Appeal, Third Appellate District, summarized the background to this claim and explained its reasoning for rejecting the claim as follows:

/////

Defendant contends that he suffered prejudice when the trial court forced him to wear jail clothing throughout trial. The People concede error, but argue that it is harmless beyond a reasonable doubt. We agree.

Defendant moved in limine to be allowed to wear civilian clothing at trial. The trial court granted the motion but, as jury voir dire was about to begin defense counsel told the trial court that, due to his size (defendant at the time was 6'4" tall and weighed 268 pounds), defendant had not yet been able to procure non-jail clothing. Counsel objected to beginning the trial with defendant dressed in jail clothing, but the court did not want to delay voir dire, and the trial judge decided to proceed with defendant dressed as he was.

At the beginning of trial, the trial court instructed the jury panel not to form a bias against defendant because he was in custody or to speculate as to why; the court explained that the most common reason for being in custody is inability to make bail. The court gave this instruction again during the voir dire. The court did not mention defendant's clothing.

Defense counsel said to the prospective jurors: "You all have been told my client is wearing the bright orange of the Sacramento County jail uniform," then asked "So nobody is going to give weight to the fact that he's ... wearing orange..., fair to say?" No one indicated that he or she would do so.

During trial, Wayne W. Was asked if he saw either person who had come out of the garage on December 27. When he said he did, the prosecutor asked: "Can you point to that person and tell us what he's wearing?" Wayne W. Answered: "Orange shirt, sitting across from me."

The prosecutor later asked one of the investigating officers whether he had had any contact on December 27 with "the man in the orange jumpsuit at the end of counsel table" and whether he recognized "the man in orange today" as one of the persons he had seen on that date; he answered that he did. The prosecutor asked another investigating officer if he recognized "the man in orange here at counsel table"; the officer did. Finally, the prosecutor asked Olsen'[s] son, "Do you know the man in orange at the end of counsel table?"

To compel a defendant to go to trial wearing jail clothing violates his constitutional rights to a fair trial, due process, and equal protection. It creates an unacceptable risk of undermining the presumption of innocence in the jury's eyes. Furthermore, it does not serve any essential state interest, and it is imposed discriminatorily on those who cannot afford to make bail. [*Estelle v. Williams* (1976) 425 U.S. 501, 503-505, 96 S.Ct. 1691, 1692-

1693, 48 L.Ed.2d 126, 130-31 (*Estelle*); *People v. Taylor* (1982) 31 Cal.3d 488, 494-495, 183 Cal.Rptr. 64, 645 P.2d 115 (*Taylor*).) Nevertheless, the error is not reversible per se, but may be found harmless beyond a reasonable doubt under the *Chapman* standard (*Chapman v. California* (1967) 386 U.S. 18, 21-22, 87 S.Ct. 824, 826-27, 17 L.Ed.2d 705, 709). [Citations.]

We note that this claim of error may be forfeited by defendant's failure to timely object or otherwise bring the matter to the trial court's attention. [Citations.] The Attorney General concedes, however, that defendant raised the issue sufficiently below, even though he did not object to the court's ruling, the prosecutor's questions, or the witnesses' remarks.

In any event, in *Taylor*, on which defendant relies, the Supreme Court found the error was not harmless beyond a reasonable doubt because (1) witnesses' descriptions of the defendant's clothing ("blue county clothes," "blue jail suit") pointed out that it was jail clothing; (2) evidence on key issues was hotly disputed; and (3) the defendant testified, putting his credibility in issue. Thus, the high court could not feel sure that the jury would have rejected the defendant's story if not for the prejudice aroused by seeing him in jail clothing. (*Taylor, supra*, 31 Cal.3d at pp. 499-501, 183 Cal.Rptr. 64, 645 P.2d 115; see also *People v. Hetrick* (1981) 125 Cal.App.3d 849, 855, 178 Cal.Rptr. 303 [testifying defendant].) The present case is distinguishable.

Defendant's credibility was not in issue here because he did not testify or give an out-of-court statement. There were no significant evidentiary disputes: count 1 (the only contested count) turned on the legal meaning of the undisputed evidence that defendant illicitly entered Olsen's premises on December 27, fled rather than identify himself, and was found to be in possession of Olsen's property. Finally, so far as the prosecutor's lone reference to defendant's "orange jumpsuit" could have been prejudicial, defense counsel's statement during voir dire that this was "the Sacramento County jail uniform" and, pursuant to his questioning, the juror's assurances that they would not be biased against defendant because he was in jail helped insure that his jail clothing would not be held against him severely lessened any prejudice defendant might otherwise have suffered. Unlike the fact situation in *Taylor*, the prosecutor's and witnesses' other references to defendant's clothing here mentioned only its color and not its provenance. Thus, *Taylor* is not persuasive authority for reversal here. Based on the factors delineated in *Taylor*, we conclude that the trial court's error in causing defendant to go through trial in jail clothing was harmless beyond a reasonable doubt.

Defendant asserts that there was insufficient evidence to show that he committed either burglary per se or first degree burglary and that, therefore, the jury's contrary verdict on count 1 could have

> resulted only from the bias attributable to his jail clothing.
>
> Defendant's claim as to burglary per se lacks merit. He repeats his trial theory that other people must have burglarized the house on other dates because he did not possess any of the valuables on the property list of Olsen's son, and the items he possessed proved only that he received stolen property as charged in count 2. However, on appeal we view the evidence most favorably to the verdict. (*People v. Johnson* (1980) 26 Cal.3d 557, 578, 162 Cal.Rptr. 431, 606 P.2d 738.) So viewed, the evidence established that defendant entered Olsen's premises illicitly and thereafter possessed items of his property which were normally kept in his residence. This sufficiently proved by reasonable inference that defendant entered "with intent to commit grand or petit larceny." (Pen. Code, § 459.) Whether others did the same on other occasions is immaterial. It is also immaterial that he did not acquire anything of great value, because he could properly have been convicted of burglary even if he had not acquired anything at all: unlike the offense of receiving stolen property, the offense of burglary does not have as one of its elements the obtaining of another person's property.

LD10 at 6-8.

As the state appellate court recognized, United States Supreme Court precedent clearly establishes that [t]he State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle v. Williams*, 425 U.S. 501, 512 (1976). Failure to object to the appearance of the accused in identifiable prison clothes, for whatever reason, is a waiver of the right to claim compulsion. *Id.* at 512-13; *see also United States v. Rogers*, 769 F.2d 1418 (9th Cir. 1985). Here, no objection by the defense to petitioner appearing before the jury in identifiable jail clothing appears in the record; however, the trial court nevertheless stated on the record that defense counsel had made such an objection and that the objection was preserved for the record.

Petitioner's trial began on August 16, 2007; no jurors were present that day as the trial court heard motions in limine. Reporter's Transcript ("RT") at 1-5. One of the motions in limine included a defense request for an order that would "allow Mr. Meredith to appear before the jury in civilian clothing rather than jail attire." RT at 3-4. The trial court granted the motion, stating:

> The court will grant that. We will not bring in the jury and not allow them to see Mr. Meredith at all until and unless he is dressed

> in his civilian clothing. We will make sure that he is not seen in the county jail-issued clothing throughout this trial. That will be granted.

RT at 3-4.

Jury selection was scheduled to begin on Monday, August 20, 2007. CT at 120. On August 19, defense counsel sent an electronic communication to the court and the district attorney indicating he was "running into some unexpected complications obtaining clothes for Mr. Meredith... [who] takes a 44 waist 36 length pant, and a 3X shirt," and "as of this moment it doesn't appear that Mr. Meredith can dress for the jury on Monday morning." Supp. CT at 1.

The next day, on August 20, 2007, the court had a panel of 45 prospective jurors assembled outside the courtroom. CT at 120. Before bringing in the panel, the court ruled on the district attorney's motions in limine and then added:

> For the record, I also did receive a motion and an e-mail with respect to clothing for Mr. Meredith. I'm aware that [defense counsel] was unable to secure clothing for this morning's session.
>
> I will instruct the jurors even if Mr. Meredith was in shirt and tie, that he is in custody. [Defense counsel] has attempted to secure clothing.
>
> But given that I have a panel of forty-five people out there, it's not my intention to delay jury selection this morning.
>
> Your objection is noted, [defense counsel], and is preserved on the record.

RT at 11. The following colloquy took place:

> [Defense Counsel]: Would the court be kind enough to tell the jury his custody status is simply a function of his inability to make bail?
>
> THE COURT: That's what I said.
>
> [Defense Counsel]: All right. Thanks.
>
> THE COURT: Any other matters we need to take up this morning?
>
> [Defense Counsel]: Not for the defense. Thank you. RT at 11-12.

Jury selection then began and continued throughout the day.

Upon review of the record, a defense objection to petitioner appearing before the jury in identifiable jail clothing cannot be located. The trial court nevertheless clearly stated to defense counsel, "your objection is noted, ... and is preserved for the record." RT at 11. Further complicating this matter, the state appellate court appeared to make an explicit finding of fact (*see* 28 U.S.C. § 2254(e)(1)) that "[c]ounsel objected to beginning the trial with defendant dressed in jail clothing" (LD 10 at 6), yet noted later in the same opinion, as to petitioner's claim that he was compelled to stand trial in identifiable jail clothing, that "this claim of error may be forfeited by defendant's failure to timely object or otherwise bring the matter to the trial court's attention." LD 10 at 7. In any event, the waiver issue need not be reached. The trial court went on to reject the claim on the merits based on a finding of harmless error in a decision that is consistent with, and a reasonable application of clearly established Supreme Court precedent.

In order to grant habeas corpus relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine both that the state court's decision was contrary to or an unreasonable application of clearly established Supreme Court precedent on harmless error *and* that the petitioner suffered prejudice under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). *See Inthavong v. LaMarque*, 420 F.3d 1055, 1059 (9th Cir. 2005). As the state court recognized, under the clearly established harmless error standard of *Chapman v. California*, 386 U.S. 18, 24 (1967), a conviction is not reversed for a constitutional error that is harmless beyond a reasonable doubt. Pursuant to *Brecht*, in order for habeas corpus relief to be available, petitioner must also demonstrate that the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (internal quotation marks and citations omitted); *see also Fry v. Pliler*, 551 U.S. 112 (2007).

In this case, during voir dire, defense counsel elicited from potential jurors an assurance that they would not be biased against petitioner because he was wearing identifiable jail clothing. Aug. RT at 123-24. The trial court also instructed the jury that petitioner's custody

status was not to impact their decision:

> You also must not be biased against defendant because he is in custody. Do not speculate about the reason. The fact that he is in custody is not evidence that the charges are true, and you must completely disregard this circumstance in deciding issues in this case.
>
> There are an a [*sic*] lot of reasons why someone may still been [*sic*] in custody. The biggest reason is normally they can't make bail.
>
> So you can't speculate about why or why not someone is or is not in custody. It's not something you can consider at all.
>
> The defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of each crime beyond a reasonable doubt.

Aug. RT at 18. The jury is presumed to have followed the court's instructions. *Rhoades v. Henry*, 598 F.3d 495, 510 (9th Cir. 2010); *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

More importantly, there were few contested issues of fact at trial and the evidence of petitioner's guilt was strong. Defense counsel conceded that petitioner was in possession of stolen property (count II) and methamphetamine (count III). RT at 23, 169-70, 181. Thus, the jury was left with deciding whether he committed burglary (count I) and if so, what degree. To prove that petitioner was guilty of burglary, the jury was instructed that the prosecution had to prove that he entered a building or a room within a building with the concurrent intent to commit theft. *See* CT at 177. First degree burglary "is the entry of an inhabited house or a room within an inhabited house," while "all other burglaries are of the second degree." CT at 179. These two determinations were not as likely to be influenced by petitioner's appearance in identifiable jail clothing as might be in a case where witness credibility was a crucial determination. Petitioner did not testify and so his credibility was not directly before the jury. Under these circumstances, the state court reasonably determined that "[t]here were no significant evidentiary disputes

/////

[because] count 1 (the only contested count) turned on the legal meaning of the undisputed evidence...” LD 10 at 7.

As to the burglary count, eyewitness Wayne W. testified that he saw petitioner exiting Mr. Olsen’s previously locked garage. RT at 32, 34. Petitioner “hopped over the back of the fence [ ] from the backyard to the front yard,” proceeded down the street, and “sped off down the street” while “tucked down” in a car. RT at 39-40, 71. When police detained him, they found two items belonging to Mr. Olsen: a traveler’s check and a pen.. RT at 106-07, 109. On this evidence, the state appellate court reasonably determined in accordance with clearly established Supreme Court precedent that petitioner’s claim was foreclosed because any error was harmless beyond a reasonable doubt. *See Chapman*, 386 U.S. at 24; *Rose v. Clark*, 478 U.S. 570, 579 (1986) (“Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed [despite existence of a constitutional error that is subject to harmless error analysis]). Also based on the strength of the evidence, petitioner fails to show that any error had a substantial and injurious effect or influence in determining the jury’s verdict. *Brecht*, 507 U.S. at 638-39, n.9 (finding no substantial and injurious effect or influence where the prosecutorial misconduct was not of the “deliberate and especially egregious” type and “the State’s evidence of guilt was, if not overwhelming, certainly weighty.”).

Petitioner argues that he suffered prejudice because he “was detoured from taking the witness stand and testifying on his own behalf, because of the jail house clothing he was forced to wear, [and] was distraught due to the unfair procedures utilized against him.” Dckt. 32 at 10. The Supreme Court has considered that compelling a defendant to stand trial in identifiable jail clothing may impact his defense including his decision to testify. *See Estelle*, 425 U.S. at 519. Here, however, petitioner’s self-serving statement has no support in the record and he makes no attempt to show how his testimony would have changed the outcome of the

case. Petitioner's defense to the contested burglary count was that the house was not an inhabited residence in terms of the burglary statute on the date in question. RT at 140. Trial counsel argued to the jury:

> [The home was] not being used as a residence. Nobody was living there. Nobody was dwelling there. Nobody was sleeping there. Nobody was eating there. Nobody was raising a family. [¶] That house for a period of three months was cold and dark. And it was used as little more than a place to store property.

RT at 172. Petitioner's testimony would not have benefitted this purely legal defense.[1]

In sum, the tenuous possibility that the jury might have been influenced by petitioner's identifiable jail clothing is far too frail a reed to rely upon as a predicate for setting aside his state court conviction. Petitioner fails to demonstrate that the state court's rejection of the claim based on a finding of harmless error was contrary to, or an unreasonable application of Supreme Court precedent, or that any error had a substantial and injurious effect or influence in determining the jury's verdict. No relief is available.

B. Ineffective Assistance

For his second ground in the second amended petition, petitioner claimed that appellate counsel rendered ineffective assistance in violation of the Sixth Amendment. Respondent asserts that petitioner's second ground is unexhausted and petitioner, in his traverse, "stipulates that the issue is in fact unexhausted." Dckt. 40 at 10. The exhaustion of state court

---

[1] Petitioner's testimony at trial also would have opened the door to the prosecution's admission of any prior felony convictions involving moral turpitude, subject to the trial court's discretion. *People v. Castro*, 38 Cal.3d 301, 306 (1985). Petitioner's previous convictions included a February 26, 1993 felony conviction for first degree burglary of a garage (*see People v. Bothueal*, 205 Cal.App.3d 581, 595 (1988) (burglary is a crime involving moral turpitude because it satisfies the threshold of a crime indicating a readiness to do evil)), an October 13, 1994 conviction for felony cocaine trafficking (*see People v. Navarez*, 169 Cal.App.3d 936, 949 (1985) (a conviction for transportation of a controlled substance entails moral turpitude)), and a May 23, 2002 conviction for felony receiving stolen property (*see People v. Rodriguez*, 177 Cal.App.3d 174, 179 (1986) ("One who unlawfully acts in disregard for the property rights of others, whether known or unknown, demonstrates moral laxity and to some degree a 'readiness to do evil.'")). CT at 209-212.

remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). Petitioner indicated that he wishes to abandon this ground for relief and proceed solely on his single exhausted claim that he was unconstitutionally compelled to stand trial in identifiable jail clothing. Dckt. 40 at 10. Accordingly, petitioner's second ground for relief is deemed abandoned and stricken from the second amended petition.

CONCLUSION

For the foregoing reasons, the petition is hereby denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b).

A certificate of appealability should be granted for any issue that petitioner can demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different court, or is "'adequate to deserve encouragement to proceed further.'" *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).[2] In this case, petitioner has made a substantial showing of the denial of a constitutional right on the issue whether he was unconstitutionally compelled to stand trial in identifiable jail clothing.

/////

/////

/////

---

[2] Except for the requirement that appealable issues be specifically identified, the standard for issuance of a certificate of appealability is the same as the standard that applied to issuance of a certificate of probable cause. *Jennings*, 290 F.3d at 1010.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for writ of habeas corpus is denied; and

2. A certificate of appealability shall issue as to petitioner's claim that he was unconstitutionally compelled to stand trial in identifiable jail clothing.

DATED: June 29, 2012.

UNITED STATES MAGISTRATE JUDGE

LS/mere/1395.hc